**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**W.C. BEARDSLEE, INC.,**
a Michigan corporation**,**

    **Plaintiff,**

**v.**

**DAVID BLACK,** in personam**,**
**and the motor vessel, a 50' Sea Ray,**
**HIN SERY0004E990, her engines, tackle,**
**machinery, appurtenances, etc.** in rem**,**

    **Defendant.**
_____/

Case No. 04-70344

**HONORABLE DENISE PAGE HOOD**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I. Introduction**

Plaintiff, W.C. Beardslee, Inc. [hereinafter "Plaintiff" or "Falkiewicz"] filed this Complaint against Defendant David Black [hereinafter "Defendant"], the owner of the motor vessel, in personam, and the motor vessel, a 50' Sea Ray, HIN SERY0004E990 [hereinafter "Vessel"], her engines, tackle, machinery, and appurtenances, in rem. Count One of Plaintiff's Complaint, alleges that the Defendant refused to pay an amount due and owing on a contract with Plaintiff for repair services, thereby breaching the contract and giving rise to a maritime lien. Count Two alleges unjust enrichment or agreement implied in fact or law by Defendant's receipt and acceptance of the repairs and renovations completed on the Vessel. Defendant answered and filed a Counter-Claim containing three counts. In Count One, negligence in the repair of the Vessel, Defendant alleges that Plaintiff's work was not done in a reasonable workmanlike manner. In Count Two, Defendant alleges breach of contract, and in Count Three, breach of express and implied warranties. The parties proceeded

to a bench trial.

## II. Jurisdiction

This Court has jurisdiction pursuant to its Admiralty and Maritime Jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

## III. Findings of Fact

1. Plaintiff is a Michigan Corporation with its principal place of business on Harsens Island, St. Clair County, State of Michigan.

2. Defendant David Black is the owner of a certain motor vessel, a 50' Sea Ray bearing HIN SERY0004E990 with a diesel engine.

3. At the time of this dispute, John Falkiewicz had been the Vice President, General Manager, and Owner of Plaintiff for seven years.

4. Falkiewicz was certified to work on boat engines, including diesel engines (Detroit Diesel Guild), and was engaged in the business of boat and yacht repair.

5. Defendant asked Plaintiff to survey a boat he was interested in purchasing. He had been referred to Plaintiff by Bill Novac.

6. Plaintiff, along with employee Mike Sadler, performed a survey of the the 50' Sea Ray in June 2003. Mike Sadler is also certified to work on diesel engines (Detroit Diesel Guild).

7. Plaintiff prepared a list, "David Black Sea Ray-Bossanova" (Plaintiff's Exhibit A) documenting twelve items Plaintiff noted on the Vessel and sent it to Defendant for his inspection. Plaintiff suggested no time frame for the repairs documented on the list.

8. Plaintiff invoiced Defendant $501.28 for the visual survey which included collection of oil samples and the cost of sending them for analysis. This bill has not been paid.

9. On June 25, 2003, Defendant telephoned Falkiewicz inquiring about his "thoughts on the boat" and requesting a fax of the oil analysis. Falkiewicz discussed the list of repairs with Black and indicated he would send the analysis of the oil samples.

10. On July 3, 2003, Falkiewicz received a telephone message indicating Black wanted to bring in the boat because the temperature gauge was indicating "hot". Black was apparently on a trip to St. Clair.

11. The following week Defendant brought the Vessel to Plaintiff's facility, and he, a friend, and Falkiewicz ran the boat for about ½ hour at different speeds. The Vessel was leaking oil and anti-freeze, the temperature gauge was faulty, the motor light was blinking, there were vibrations, and the bilge pumps were not working.

12. Falkiewicz agreed to repair as many things as he could while Black and his friend, David Ankley[1] went to lunch.

13. Falkiewicz changed the oil in the port transmission and topped off the coolant and transmission fluid in the starboard transmission. He noticed an abnormal material in the old oil during the oil change of the port transmission. Falkiewicz also changed the fuel filter and racor filters. The bilge pumps were repaired and new ones were

---

[1] Falkiewicz testified that Black's friend was named David Hinkley and the telephone messages reflect "Thomas David Hinkley" or "David Hinkley". Black testified that his friend "David Ankley" was visiting from Malibu, California during this time. The Court finds this is one and the same person, but is not satisfied whether the name is "Hinkley" or "Ankley", based on the testimony of these two witnesses. However, since Black testified the name "Ankley," that name will be used throughout.

ordered. The shaft and rudder logs were tightened and the port impeller was changed. The A/C pump was frozen and Falkiewicz changed the A/C pump. He cleaned under the mains. The work took about 3-4 hours. Black returned from lunch and took the Vessel. Black did not remember whether he paid for this repair, although he believed he gave a $100.00 tip.

14. Fifteen to twenty minutes later, the starboard engine failed. There was water in the bilge and black oil was spewing. The Vessel was towed into Plaintiff's facility.

15. An oil filter was found to be leaking. A gasket replaced by Plaintiff failed and oil spilled out causing the starboard engine to fail.

16. Falkiewicz indicated he would take care of the repair and arranged for Defendant to be transported to his home.

17. An invoice for work done on the boat while at Plaintiff's facility after the starboard engine failed was sent on July 31, 2003 to Defendant. (Plaintiff's Exhibit E) The invoice lists, "Repair starboard engine - replace main bearings and thrust washers" and charges totaling $742.52 for the repair resulting from the failed gasket. Falkiewicz claims this invoice does not include the repairs done to remedy the engine problem resulting from the failed gasket. Black has not paid this amount or any other charges on the July 13, 2003 invoice.

18. Between July 3 and July 18, 2003, Defendant's Vessel was being repaired at Plaintiff's facility. There are numerous telephone messages left by Defendant, Defendant's wife, Mary Black, and Defendant's friend David Ankley. In all there are ten messages.

19. Plaintiff also invoiced Defendant for propeller repair and freight on August 13, 2003 (Plaintiff's Exhibit F), and for a used set of propellers, on July 15, 2003 (Plaintiff's Exhibit D).

20. Defendant never received an estimate for any of the work performed on the Vessel.

21. Defendant checked on the status of the Vessel on several occasions. His friend, Ankley, also checked on the status of the Vessel, as he was working on the outside of the Vessel at the same time repairs were being made. Ankley authorized a number of the repairs.

22. Defendant picked up the Vessel some time around July 17or 18, 2003. Defendant wanted the Vessel in time for the start of the Mackinac Race. Falkiewicz expected the Vessel would be returned, but the Vessel was never returned to Plaintiff's facility.

23. The Vessel continued to have problems. On September 17, 2003, Falkiewicz went to Black's home to look at the Vessel. He made some additional repairs on the vehicle. The Vessel was supposed to have been returned to Plaintiff's facility, however, the Vessel was never returned to the facility for repair.

24. Defendant states he later had the motor reassembled by another mechanic and that the work done by Plaintiff did not repair his Vessel.

25. Plaintiff completed the repairs listed on the invoices sent to Defendant. The total amount is $10, 746.88. The amounts of the invoices are listed on Exhibits B, C, D, E, and F. The invoices contain certain language charging 1.75% interest per month on delinquent payments, which are defined as all overdue accounts after thirty (30)

days. The amount for the repair following the gasket failure is listed on Exhibit H. This amount is not included in the other invoices.

26. Defendant never disputed any of the invoices sent by Plaintiff and never paid any of the invoices.

27. Defendant presented no evidence at trial to show that any of the repairs or other work done, other than the first repair, were not performed in a workmanlike fashion. He presented no documents or testimony to show anything other than the fact that he had another mechanic reassemble the motor subsequent to Plaintiff's inspection of it at Defendant's home in September 2003.

28. Defendant presented no evidence other than his conclusory, self-serving statements at trial that the Vessel is not fit for its ordinary purpose or that he has had to have subsequent repair of the Vessel.

## IV. Conclusions of Law

### A. The Federal Maritime Lien Act - Plaintiff's Complaint, Count I

Plaintiff claims that Defendant, or his agent David Ankley, authorized all the repairs done on the Vessel and that these repairs and other work done were "necessaries" within the meaning of the Federal Maritime Lien Act, 46 U.S.C. § 31342. This section provides:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner...
> (1) has a maritime lien on the vessel
> (2) may bring a civil action in rem to enforce the lien: and
> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342

"Necessaries" are defined as, ...what is reasonably needed in the ship's business." *J. Ray*

*McDermott v. Off-Shore Mehaden Co.*, 262 F.2d 523, 525 (5th Cir. 1959) (quoting *The Penn*, 273 F. 990, 991 (3rd Cir. 1921)). "Necessaries are also defined as, "...goods and services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir. 1986) (en banc).  Necessaries are the things that a prudent owner would provide to enable a ship to perform well the function for which she has been engaged. *Id*.

The Plaintiff claimed a survey of what repairs were needed to be done to the Vessel was prepared in June 2003, at the request of the Defendant, and that Plaintiff provided Defendant with a list of items in need of repair, and discussed the survey with Defendant prior to him purchasing the Vessel.  Defendant then purchased the Vessel and brought it to Plaintiff's facility on July 3, 2003, in order to have Plaintiff repair some items to ready the Vessel for a voyage, including the temperature gauge, oil and antifreeze leaks, the engine light, and address some vibrations. Falkiewicz, Defendant, and Mr. Ankley took the Vessel on a lake trial, running the engine at different speeds.  Plaintiff and Defendant also went over the items listed in the aforementioned survey.  Plaintiff repaired these items initially, while Defendant and Mr. Ankley went for lunch for 3-4 hours.  After this first repair, Defendant returned when oil began spewing out of a gasket. Plaintiff then performed subsequent repairs on the Vessel, which Plaintiff indicates that he did not charge Defendant to perform.  (Exhibit H).  Plaintiff then performed the repairs on invoices introduced as Exhibits B, C, D, E, and F.  Plaintiff indicated that all repairs performed were necessary for maintenance. Defendant did not present any evidence to counter Plaintiff's contention that the work performed on the Vessel constituted "necessaries."

Plaintiff next claims that all of the work performed on the Vessel was authorized by either

7

Defendant or his agent David Ankley, Defendant's friend from Malibu. Defendant admits that he requested and authorized some of the work done on the Vessel. As mentioned previously, Defendant requested, received and reviewed with Plaintiff, the survey of items needed to be repaired on the Vessel. The evidence supports a finding that Defendant never paid for the survey.

When Defendant brought the Vessel in on July 3, 2003, and asked Plaintiff to check the fluids, the temperature gauge, the engine light, and the vibrations, He cannot recall whether he paid Plaintiff or not. He first testified he "believed" he paid $500 dollars, but later indicated he could not recall. Defendant did not pay for any of the work done during this repair which occurred during his lunch break. He may have left a $100 tip as he claimed, but paid nothing for the repair. Defendant returned the Vessel to Plaintiff's facility following the first repair. Following the correction of the July 3, 2003 repair, Plaintiff made numerous additional repairs to the Vessel. Plaintiff indicated that all repairs to the Vessel where either authorized by Defendant or Mr. Ankley.

Defendant, during the course of his testimony, admitted authorization of: the reconditioned propellers, although he makes the conclusory claim that they do not work sufficiently; the haul out approved by Mary Black; the gold logo; the seats; the racor and fuel filters; and fluid top offs. Defendant testified that he did not authorize the repair of: the bilge pump, shaft logs, rudder logs, propellers, A/C pump, starboard oil filter, cleaning under the mains, the imperial compound, or anything else invoiced by Plaintiff. Defendant also testified that the repairs were not done in a workmanlike manner. Defendant presents no evidence, other than his testimony as a long time boat owner, to refute the evidence that these repairs were not needed or were not "necessaries". In addition, Defendant does not present anything other than his testimony to indicate that the repairs were not done in a workmanlike manner. There is no evidence that the Vessel was not seaworthy

on the trip taken after he retrieved the Vessel on July 17 or 18, 2003, following the repairs that were completed by Plaintiff. Defendant never questioned any invoice, and at trial did not dispute the costs of the repairs, except to note that he believed Plaintiff had offered to fix the repair incurred as a result of the work performed on July 3, 2003 at no cost to him.

Defendant Black testified that David Ankley had permission to be on the boat, but his testimony was not persuasive as to whether or not Ankley had the authority to authorize repairs to the Vessel. Falkiewicz testified that he regularly telephoned Black, and received calls in return from him, and that Ankley regularly checked on the Vessel and the progress of repairs. There are telephone messages from David Ankley, including one which notes, "status of part? Deadline for running Thurs PM." Another message dated September 18, reads, "copy of bills to Pay-valve covers off stbd-put back on-Haul IRI." Falkiewicz also testified that Ankley had come back to "go thru" the bills.

### B. Mr. Ankley as an Agent of Defendant - Plaintiff's Complaint, Count I

An agent, with authority to procure necessaries for a vessel is generally defined under The Maritime Lien Act as:

> (1) the owner;
> (2) the master;
> (3) a person entrusted with the management of the vessel at the port of supply; or
> (4) an officer or agent appointed by-
>     (A) the owner
>     (B) a charterer
>     (C) an owner pro hac vice
>     (D) an agreed buyer in possession of the vessel

46 U.S.C. § 31341(a).

The burden of proving the existence of any agency relationship is upon the party seeking to rely upon the agency relationship. *Hofherr v. Dart Industries, Inc.*, 853 F.2d 259, 262 (4th Cir.

1988).

The evidence at trial showed that Ankley was the friend of Defendant. Mr. Ankley was on the Vessel the first time it was brought to Plaintiff and on the trial run taken at that time. Defendant testified that Ankley had permission to board the boat and access to it, even while it was at Plaintiff's facility being repaired. Defendant also indicated that Ankley was doing some work on the outside of the Vessel, but did not admit that Ankley had authority to authorize repairs or other work. The evidence showed, however, that Ankley telephoned Defendant several times to inquire about the boat. Falkiewicz testified that Ankley authorized work on the Vessel, and that he had even talked to Ankley on one occasion when Ankley was talking to Defendant on the cell phone. Apparently messages were passed to Defendant thru Mr. Ankley. Falkiewicz also testified that Ankley reviewed the invoices that were sent from Plaintiff to Defendant.

The Court finds that David Ankley was not clearly an agent of Defendant with authority to authorize repairs or other work done on the Vessel by Plaintiff. Mr. Ankley was a friend of Defendant and, based on the testimony adduced at trial, the Court finds that Mr. Ankley was conveying messages between Defendant and Falkiewicz concerning work being done on the Vessel. Mr. Ankley did not independently approve any necessaries, but only conveyed messages indicating Defendant's approval.

### C. Unjust Enrichment - Plaintiff's Complaint, Count II

Plaintiff's Complaint alleges that Defendant was unjustly enriched by the performance of the work on the Vessel. In order to prove unjust enrichment, the Plaintiff must show the following: (1) receipt of a benefit which (2) it is inequitable that the defendant retain. *Michigan Educ. Employees Mut. Ins. Co. v. Morris*, 460 Mich. 180, 198 (1999).

Plaintiff has shown that Defendant received a benefit. Defendant disputes this, claiming that the first repair involving the temperature gauge, engine and fluids, resulted in further damage to the Vessel. Otherwise, Defendant has failed to refute Plaintiff's claim that the repairs and work done on the Vessel were not a benefit. Plaintiff has also shown that Defendant has failed to pay for the repairs and other work done on the Vessel, and that it is inequitable for Defendant to retain the benefit without payment. Of course, Defendant would not be liable for those repairs performed by Plaintiff to cure the first set of repairs, as Defendant received no benefit from it. The testimony about how the damage following the first repair was to be paid for is in dispute. Defendant testified and Falkiewicz did not dispute, that Falkiewicz stated he would "take care of it." Defendant inferred from this comment that Falkiewicz meant that there would be no charge for the damage resulting from the first repair. Falkiewicz stated that he did not mean there would be no charge, but in fact did not charge Black for work done to cure his first repair. Exhibit H shows the loss that Plaintiff incurred for the damage occurring after the first repair. Falkiewicz, however, claims those repairs are not a part of the work done on the invoices that have gone unpaid.

### D. Defendant's Counter-Claims

Defendant counter-claimed, alleging that Plaintiff was negligent by failing to perform the work done on the Vessel in a reasonable workmanlike manner, causing additional damage to the vehicle. Defendant claimed such negligence was manifested by Plaintiff's failure to properly apply and fasten the gasket, oil cap or the oil filter, allowing oil to leak out of the engine. Defendant claimed a loss of $10,000 in repairs, non use of the Vessel, delay in readying the Vessel for the boating season, attorney fees and incidentals. Defendant also counter-claimed alleging breach of contract, asserting that Plaintiff breached the contract with Defendant to perform certain

11

maintenance on the vehicle, and that by improperly and inadequately performing the work, Plaintiff caused damage to the Vessel. Defendant requested the damages listed above. Finally, Defendant counter-claimed alleging breach of express and implied warranties, including the warrant of merchantability, once again alleging the same damages set forth above.

In his trial brief, Defendant cites *no* case law to support any of his affirmative defenses or counter-claims. Defendant has presented nothing other than his testimony that he suffered $10,000.00 in damages for repair of the Vessel after Plaintiff's work on the Vessel. Defendant also does not present any evidence other than his self-serving testimony regarding the cause of any damage he claims Plaintiff caused to the Vessel. Defendant does not support his claim that the reason the Vessel was under repair for approximately three weeks was the result of the damage, if any, caused by the oil change or Plaintiff's first repair.

Plaintiff argues that Defendant's counter-claim for negligence is barred by the economic loss doctrine, citing *East River S.S. Crop. v. Transamerica Delaval*, 476 U.S. 858 (1986). *See also*, *Employers Insurance of Wausau v. Suwannee River SPA Lines, Inc.*, 866 F.2d 762 (5th Cir. 1989); *Messina v. Ocean Repair-Service Co.*, No. 86 Civ. 7898, 1991 WL 116336 (S.D.N.Y. June 17, 1991). Defendant did not respond to this argument, which the Court finds has merit. The Court finds that Defendant cannot prevail on a negligence claim.

Since the Defendant has not supported any of his other counter-claims or affirmative defenses, the Court also finds them without merit. Even though the Court finds that Plaintiff's offer "to take care" of the repair to the Vessel occurring after Plaintiff's first repair could be construed as an admission of some damage, Defendant has not shown that to be true, and Plaintiff does not specifically so state. In any event, Plaintiff did not charge Defendant for that repair.

12

**V. Conclusion**

The Court in finding these facts and making these conclusions of law has taken into consideration the credibility of the witnesses and their demeanor and has given them the weight the Court deems appropriate under the law. To the extent any finding of fact also constitutes a conclusion of law or any conclusion of law states a finding of fact, the Court so finds and concludes.

The Court finds in favor of the Plaintiff on its claim of breach of contract and 46 U.S.C. § 31342, finding that Defendant Black has failed to pay the amount due and owing for breach of contract and "necessaries" as agreed with Plaintiff, as set forth above, in the amount of $10,746.88, plus interest at 1.75% per month thru January 31, 2005 of $3,217.46, and continuing until the date of judgment, and giving rise to a maritime lien against the Vessel, 50' Sea Ray, HIN SERY0004E990, her engines, tackle, machinery, appurtenances, etc. pursuant to the Supplemental Rules for certain Admiralty and Maritime Claims under the Federal Rules of Civil Procedure and 46 U.S.C. § 31342.

Accordingly,

IT IS ORDERED that Judgment will be entered in favor of the Plaintiff and against the Defendant David Black, in personam and the motor vessel, a 50' Sea Ray, HIN SERY0004E990, her engines, tackle, machinery, appurtenances, etc., in rem, in the amount of $10,746.88, plus interest at 1.75% per month thru January 31, 2005 of $3,217.46, and continuing until the date of judgment, and a maritime lien shall be placed upon the motor vessel, a 50' Sea Ray, HIN SERY0004E990, her engines, tackle, machinery, appurtenances, etc.

        s/ DENISE PAGE HOOD
        DENISE PAGE HOOD
        United States District Judge

DATED: September 30, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2005, by electronic and/or ordinary mail.

        s/William F. Lewis
        Case Manager